# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SYLVIA A. CLOUSER,** | ) | |
| | ) | **CIVIL ACTION NO. 3:15-33** |
| **Plaintiff,** | ) | |
| | ) | **JUDGE KIM R. GIBSON** |
| **v.** | ) | |
| | ) | |
| **GOLDEN GATE NATIONAL SENIOR** | ) | |
| **CARE, LLC, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

### I.  Introduction

Before the Court in this matter are Defendants' amended motion to dismiss for failure to state a claim and Defendants' motion to compel arbitration.  (ECF No. 40.) These matters have been fully briefed (*see* ECF Nos. 42, 43, 48) and are ripe for disposition. For the reasons that follow, Defendants' amended motion to dismiss for failure to state a claim and Defendants' motion to compel arbitration will be **GRANTED in part and DENIED in part**.

### II.  Jurisdiction and Venue

The Court has jurisdiction over the instant action pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1441.  Venue is proper pursuant to 28 U.S.C. § 1391.

### III.  Background

Plaintiff initiated the instant action by filing a complaint in the Court of Common Pleas of Blair County, Pennsylvania, on January 12, 2015.  (*See* ECF No. 1-2.)  Defendants

removed the action to this Court on February 5, 2015. (ECF No. 1.) The Court notes that this case appears to be one of a number of similarly situated actions arising in federal courts in Pennsylvania. The following facts are alleged in the complaint, which the Court will accept as true for the sole purpose of deciding the pending motions.

On or about April 8, 2011, Plaintiff's decedent, John J. Clouser, was admitted as a resident at the Golden Living Center-Hillview skilled nursing facility in Altoona, Pennsylvania, for his mobility issues and advancing Alzheimer's disease and dementia. (ECF No. 1-2 ¶¶ 7-8.) Although Mr. Clouser did not have skin breakdown at the time of his admission, he developed redness and irritation of the skin around his coccyx, groin, scrotum, and buttocks from August 2011 through the time of his discharge on February 17, 2013. (*Id.* ¶¶ 8-9.) Documentation throughout 2012 indicated that Mr. Clouser had no abnormal skin conditions, and no documentation was made concerning Mr. Clouser's incontinence. (*Id.* ¶¶ 10-12, 16-17.) Records from 2013 included false documentation as to Mr. Clouser's weekly skin checks, his activities of daily living, and his intake and outtake logs. (*Id.* ¶¶ 13-15.)

On February 17, 2013, Mr. Clouser had red blood draining from his rectum, which increased throughout the day, but his medical records did not include notations of skin breakdown. (*Id.* ¶¶ 18-20.) Plaintiff, who was not informed of the gravity of Mr. Clouser's condition, requested that Mr. Clouser not be transferred to Altoona Hospital until the following morning. (*Id.* ¶¶ 21-22.) Defendants' February 18, 2013, discharge records stated that Mr. Clouser weighed 256 pounds, had no pressure ulcers, and was suffering from internal bleeding. (*Id.* ¶ 23.) Altoona Hospital's admission notes from

February 18, 2013, indicated that Mr. Clouser weighed 225 pounds, was septic, and was in renal failure.  (*Id.* ¶ 24.)

When Mr. Clouser was examined on February 19, 2013, he was diagnosed with a perianal fistula and a decubitus ulcer extending from the buttocks toward the anus.  (*Id.* ¶ 25.)  Because Mr. Clouser's white blood count was 22.6, he was diagnosed with sepsis and underwent a debridement of the decubitus ulcer and drainage of the perirectal abscess.  (*Id.* ¶¶ 26-27.)  Although blood and urine cultures tested negative for infection, cultures taken from the wound revealed the growth of Proteus Mirabilis, Escherichia Coli, and Enterococcus Faecalis.  (*Id.* ¶¶ 28-29.)  On February 21, 2013, Mr. Clouser underwent a laparoscopic sigmoid colostomy and debridement of the perianal wound, but he remained septic.  (*Id.* ¶¶ 31-32.)  Mr. Clouser passed away that day.  (*Id.* ¶ 32.)

Plaintiff alleges that Defendants' conduct was willful, wanton, negligent, and careless.  (*Id.* ¶¶ 33-34.)  In Count I of her complaint, Plaintiff asserts a wrongful death action against Defendants.  (*Id.* ¶¶ 35-39.)  In Count II of her complaint, Plaintiff asserts a survival action against Defendants.  (*Id.* ¶¶ 40-42.)  Defendants have filed an amended motion to dismiss Plaintiff's complaint for failure to state a claim and a motion to compel arbitration.  (ECF No. 40.)

## IV.    Applicable Law

Defendants move to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) allows a party to seek dismissal of a complaint or any portion of a complaint for failure to state a claim upon which relief can be granted. Although the federal pleading standard has been "in the forefront of jurisprudence in recent years," the standard of review for a Rule 12(b)(6) challenge is now well established. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 209 (3d Cir. 2009).

In determining the sufficiency of a complaint, a district court must conduct a two-part analysis. First, the court must separate the factual matters averred from the legal conclusions asserted. *See id.* at 210. Second, the court must determine whether the factual matters averred are sufficient to show that plaintiff has a "'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The complaint need not include "'detailed factual allegations.'" *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Moreover, the court must construe the alleged facts, and draw all inferences gleaned therefrom, in the light most favorable to the non-moving party. *See id.* at 228 (citing *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir. 2003)). However, "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action . . . do not suffice." *Iqbal*, 556 U.S. at 678. Rather, the complaint must present sufficient "'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

Ultimately, whether a plaintiff has pleaded a "plausible claim for relief" is a "context-specific" inquiry that requires the district court to "draw on its judicial

experience and common sense." *Iqbal*, 556 U.S. at 679. The relevant record under consideration includes the complaint and any "document integral to or explicitly relied upon in the complaint." *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). If a complaint is vulnerable to dismissal pursuant to Rule 12(b)(6), the district court must permit a curative amendment, irrespective of whether a plaintiff seeks leave to amend, unless such amendment would be inequitable or futile. *Phillips*, 515 F.3d at 236; *see also Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).

## V. Discussion

Initially, the Court notes that on April 15, 2015, during the parties' Federal Rule of Civil Procedure 16 conference, counsel for Defendants requested a ninety-day discovery period related to the arbitration issue. (ECF No. 27 at 2.) The Court noted that discovery related to the arbitration issue and general discovery could be conducted simultaneously. (*Id.*) The Court therefore stated that it would delay its ruling on Defendants' motion to dismiss until after the close of discovery. (*Id.*) Accordingly, although this matter comes before the Court as a motion to dismiss, the Court may resolve the arbitration issue at this time.

To resolve the arbitration issue, the Court must first determine whether the alternative dispute resolution agreement ("ADR Agreement") is valid. *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005). If the ADR Agreement is enforceable, then the Court must examine whether Plaintiff's complaint falls within its scope. *Id.*

### A.    Validity of the ADR Agreement

Defendants argue that the ADR Agreement is valid because Mr. Clouser executed a General Power of Attorney on January 4, 2010, appointing his wife, Plaintiff, and his son as his Attorneys in Fact.  (ECF No. 42 at 3; *see also* ECF No. 40-3.)  At the time of his admission to Golden Living Center-Hillview on April 8, 2011, Mr. Clouser and Plaintiff signed and executed an alternative dispute resolution agreement ("ADR Agreement") with Defendants.  (ECF No. 42 at 4; *see also* ECF Nos. 40-4, 40-5.)  Defendants assert that the conspicuous terms of the ADR Agreement mandate that Plaintiff's claims be arbitrated.  (ECF No. 42 at 4-7.)  Defendants further argue that they are parties to the ADR Agreement and are therefore entitled to enforce it.  (*Id.* at 17-20.)  They also contend that Plaintiff and Mr. Clouser were both competent to sign the ADR Agreement and therefore knowingly and voluntarily waived their rights to a jury trial.  (*Id.* at 20-22.)  In support of their arguments, Defendants rely upon the depositions of Plaintiff and Kelly McCoy, the Director of Admissions at Golden Living Center-Hillview.  (*Id.* at 23-25.)

In response, Plaintiff argues that the ADR Agreement is invalid for three reasons. (ECF No. 43 at 5-25.)  First, Plaintiff asserts that Mr. Clouser was mentally incompetent when he signed the ADR Agreement.  (*Id.* at 5-9.)  Specifically, Plaintiff contends that Mr. Clouser was diagnosed with Alzheimer's disease and dementia in December 2009.  (*Id.* at 6.)  On April 5, 2011, three days before his admission to Golden Living Center-Hillview, Mr. Clouser was noted to suffer from advanced dementia.  (*Id.* at 6-7.)  Plaintiff states that Mr. Clouser did not have the ability to understand or read the admission documents and notes that she was not present when he signed the ADR Agreement and admission

agreement.  (*Id.* at 7.)  Plaintiff further emphasizes that Ms. McCoy testified that she had no memory of Mr. Clouser's admission and therefore only provided testimony regarding her general routines.  (*Id.* at 8.)

Second, Plaintiff argues that she was not authorized to execute the ADR Agreement.  (*Id.* at 9-17.)  Specifically, Plaintiff asserts that an agency relationship did not exist between her and Mr. Clouser because Mr. Clouser did not unequivocally state that Plaintiff had the authority to enter the ADR Agreement.  (*Id.* at 9-10.)  Regarding the General Power of Attorney that Mr. Clouser executed, Plaintiff states that Defendants did not rely upon it when Mr. Clouser signed the documents.  (*Id.* at 10.)  Plaintiff further contends that the General Power of Attorney did not grant her authority to enter the ADR Agreement or to consent to medical care because it governed only transactions relating to real or personal property.  (*Id.* at 11-14.)  Plaintiff argues that she did not have apparent authority when she signed the ADR Agreement because there is no evidence that Mr. Clouser authorized her to act on his behalf and was mentally incapable of doing so.  (*Id.* at 14-17.)

Third, Plaintiff argues that the ADR Agreement is unconscionable.  (*Id.* at 17-25.) Specifically, Plaintiff asserts that the ADR Agreement is procedurally unconscionable because Defendants' admissions personnel do not explain that the ADR Agreement:  (1) is not mandatory, (2) may be reviewed by an attorney, (3) is not a condition of becoming a resident, and (4) may be revoked.  (*Id.* at 18-19.)  Plaintiff notes that Ms. McCoy does not state that the ADR Agreement waives the resident's right to a jury trial and that she did not recall her meeting with Plaintiff.  (*Id.* at 19-20.)  She contends that the admissions

process is designed to overwhelm and confuse the parties and that Ms. McCoy requires residents to sign the documents without considering their competence. (*Id.* at 20-21.) Plaintiff also argues that the ADR Agreement is substantively unconscionable because it unreasonably favors Defendants. (*Id.* at 22.) Plaintiff states that Defendants disregard the ADR Agreement by filing collection actions in state court. (*Id.* at 23-24.)

In their sur-reply, Defendants argue that the General Power of Attorney enabled Plaintiff to pursue claims and litigation, which includes the power to prosecute, defend, abandon, and arbitrate any legal proceedings. (ECF No. 48 at 1-2.) Defendants assert that the General Power of Attorney was broad and permitted Plaintiff to handle all of Mr. Clouser's affairs. (*Id.* at 2-3.) Defendants also argue that Plaintiff was authorized to execute the ADR Agreement because the General Power of Attorney existed at the time of Mr. Clouser's admission. (*Id.* at 3.) Defendants contend that the ADR Agreement was not substantively or procedurally unconscionable because its conspicuous statements provided that it was not a condition of admission to residence in the facility. (*Id.* at 4-5.) Defendants note that Plaintiff admitted that she did not read the ADR Agreement before signing it and argue that she is nonetheless bound by it. (*Id.* at 6.)

"Arbitration is a matter of contract, and in determining whether an agreement to arbitrate is valid, courts apply the laws of the state where the contract was formed." *Golden Gate Nat'l Senior Care, LLC v. Brooks*, No. 14-MC-421, 2014 U.S. Dist. LEXIS 134280, at *33 (M.D. Pa. Sept. 24, 2014). In Pennsylvania, where the principles applicable to the interpretation of contracts are also applicable to agreements to arbitrate, "'[n]othing is better settled than that in order to constitute a contract there must be an offer on one side

8

and an unconditional acceptance on the other.'" *Id.* (quoting *Quiles v. Fin. Exch. Co.*, 879 A.2d 281, 285 (Pa. Super. Ct. 2005)). A valid contract therefore exists when: "(1) both parties manifested an intention to be bound by the agreement; (2) the terms of the agreement are sufficiently definite to be enforced; and (3) the agreement is supported by consideration." *Id.* at *34. Agreements to arbitrate are upheld only where the parties "have agreed to arbitrate in a clear and unmistakable manner." *Id.* A motion to compel arbitration may be granted when there is "no genuine issue of fact concerning the formation of the agreement to arbitrate." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 159 (3d Cir. 2009) (internal quotations omitted). "In making this determination, the party opposing arbitration is entitled to the benefit of all reasonable doubts and inferences that may arise." *Id.* (internal quotations omitted).

Upon review of the ADR Agreement, it is apparent that it is enforceable. At the time of his admission to Golden Living Center-Hillview on April 8, 2011, Mr. Clouser and Plaintiff signed and executed the ADR Agreement with Defendants. (ECF Nos. 40-4; 40-5.) The ADR Agreement mandates that any dispute arising out of Mr. Clouser's stay at the facility "shall be resolved exclusively by an ADR process that shall include mediation and, where mediation is not successful, binding arbitration." (ECF Nos. 40-4 at 1; 40-5 at 1.) The ADR Agreement further provides:

> **THE PARTIES UNDERSTAND, ACKNOWLEDGE, AND AGREE THAT THEY ARE SELECTING A METHOD OF RESOLVING DISPUTES WITHOUT RESORTING TO LAWSUITS OR THE COURTS, AND THAT BY ENTERING INTO THIS AGREEMENT, THEY ARE GIVING UP THEIR CONSTITUTIONAL RIGHT TO HAVE THEIR DISPUTE DECIDED IN A COURT OF LAW BY A JUDGE OR JURY, THE OPPORTUNITY TO PRESENT THEIR**

**CLAIMS AS A CLASS ACTION AND/OR TO APPEAL ANY DECISION OR AWARD OF DAMAGES RESULTING FROM THE ADR PROCESS EXCEPT AS PROVIDED HEREIN.**

(ECF Nos. 40-4 at 1; 40-5 at 1 (emphasis in original).) The ADR Agreement states that "the Parties' resort to a court of law shall be limited to an action to enforce a binding arbitration decision entered in accordance with this Agreement or to vacate such a decision[.]" (ECF Nos. 40-4 at 1; 40-5 at 1.) Mr. Clouser and Plaintiff signed the ADR Agreement. (*See* ECF Nos. 40-4 at 1, 5; 40-5 at 1, 5.)

The terms of the ADR Agreement are sufficiently definite to be enforced, and the ADR Agreement is supported by consideration because the parties mutually agreed to be bound to utilize alternative dispute resolution measures. *See Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002) ("When both parties have agreed to be bound by arbitration, adequate consideration exists and the arbitration agreement should be enforced."); *see also Brooks*, 2014 U.S. Dist. LEXIS 134280, at *3, 35 (concluding that the arbitration agreement, which included language identical to the ADR Agreement in the instant matter, was valid and enforceable).

The Court rejects Plaintiff's argument that she was not authorized to execute the ADR Agreement. On January 4, 2010, Mr. Clouser executed a General Power of Attorney, appointing his wife, Plaintiff, and his son as his Attorneys in Fact. (ECF No. 40-3.) The General Power of Attorney states that it shall be construed broadly. (ECF No. 40-3 at 4.) It also enumerated full power to Plaintiff to act on Mr. Clouser's behalf, to manage and conduct all of Mr. Clouser's affairs, to exercise all of Mr. Clouser's legal rights and powers, and to enter into binding contracts on Mr. Clouser's behalf. (*Id.* at 2-3.) The plain

terms of the General Power of Attorney, which was completed over one year before Mr. Clouser was admitted at Golden Living Center-Hillview, authorized Plaintiff to execute the ADR Agreement.  *See, e.g., Golden Gate Nat'l Senior Care, LLC v. Beavens*, No. 15-CV-17, 2015 U.S. Dist. LEXIS 110673, at *2, 20 (E.D. Pa. Aug. 20, 2015) (finding that the arbitration agreement, which is identical to the ADR Agreement in the instant matter, was valid where the defendant executed it as power of attorney); *Brooks*, 2014 U.S. Dist. LEXIS 134280, at *37-38 (same).  *See also THI of Pa. at Mountainview, LLC v. McLaughlin*, No. 14-CV-1616, 2015 U.S. Dist. LEXIS 59557, at *10 (W.D. Pa. May 6, 2015) (explaining that the nursing home resident's authorized representative executed the arbitration agreement, agreeing that she understood that she was waiving her right to a jury trial).

The Court similarly finds unavailing Plaintiff's argument that Mr. Clouser was mentally incompetent when he signed the ADR Agreement.  *See, e.g., Glover v. Darway Elder Care Rehab. Ctr.*, No. 4:13-CV-1874, 2014 U.S. Dist. LEXIS 31380, at *5-6, 30 (M.D. Pa. Feb. 4, 2014) (enforcing the arbitration agreement where the resident, who had a documented history of primary degenerative dementia and Alzheimer's disease, signed an arbitration agreement through her representative); *Estate of Hodges v. Green Meadows*, No. 12-CV-1698, 2013 U.S. Dist. LEXIS 46878, at *11, 14, 28 (E.D. Pa. Mar. 29, 2013) (finding that the arbitration agreement was valid where the resident was suffering from dementia and her daughter, who had power of attorney, signed the agreement).

Plaintiff argues that the ADR Agreement is unconscionable.  "A court may find that a contract is unconscionable, and, therefore, unenforceable, when one party to the agreement shows an absence of meaningful choice together with contract terms which are

unreasonably favorable to the other party." *Glover*, 2014 U.S. Dist. LEXIS 31380, at *23 (internal quotations omitted). Under Pennsylvania law, both procedural and substantive unconscionability must be established to void an arbitration provision. *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 181 (3d Cir. 1999); *see also Lucey v. FedEx Ground Package Sys., Inc.*, 305 F. App'x 875, 877 (3d Cir. 2009) (stating that an arbitration provision is unenforceable on the grounds of unconscionability when the elements of procedural and substantive unconscionability are established). The party seeking to avoid arbitration bears the burden of establishing procedural and substantive unconscionability. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989).

"Procedural unconscionability concerns the process by which the parties entered into the contract." *Glover*, 2014 U.S. Dist. LEXIS 31380, at *25. The Third Circuit has explained that procedural unconscionability occurs when "there is no meaningful choice on the part of the other party." *Lucey*, 305 F. App'x at 877. Procedural unconscionability is generally found where there is a contract of adhesion, which is a contract "prepared by the party with excessive bargaining power who presents it to the other party for signature on a take-it-or-leave-it basis." *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 265 (3d Cir. 2003); *see also Hopkins v. New Day Fin.*, 643 F. Supp. 2d 704, 717 (E.D. Pa. 2009). Courts may also examine the educational background of the challenging party. *See Zimmer v. CooperNeff Advisors, Inc.*, 523 F.3d 224, 228-29 (3d Cir. 2008).

The Third Circuit has explained that substantive unconscionability occurs when "the contractual terms are unreasonably favorable to the drafter." *Lucey*, 305 F. App'x at 877. Specifically, substantive unconscionability is found where the agreement contains

contractual terms "that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent." *Harris*, 183 F.3d at 181.

The ADR Agreement in the instant matter is neither procedurally nor substantively unconscionable. The ADR Agreement provides:

> The Resident understands that he or she has the right to seek advice of legal counsel concerning this Agreement; that his or her signing of this Agreement is not a condition of admission to or residence in the Facility; that he or she may revoke this Agreement by sending written notice to the Facility within thirty (30) days of signing it; and that this Agreement, if not revoked within that time frame, shall remain in effect for all care and services rendered to the Resident at or by the Facility regardless of whether the Resident is subsequently discharged and readmitted to the Facility without renewing, ratifying, or acknowledging this Agreement.

(ECF Nos. 40-4 at 3, 40-5 at 3.) Additionally, the following statement is included at the top of the ADR Agreement: "**THIS AGREEMENT IS <u>NOT</u> A CONDITION OF ADMISSION TO OR CONTINUED RESIDENCE IN THE FACILITY**." (ECF Nos. 40-4 at 1, 40-5 at 1 (emphasis in original).)

Plaintiff's argument that Ms. McCoy did not explain these terms to her and that she did not read the ADR Agreement is unpersuasive. *See, e.g.*, *Patel v. Am. Safety Indem. Co.*, No. 15-CV-927, 2016 U.S. Dist. LEXIS 16166, at *19 n.3 (W.D. Pa. Feb. 10, 2016) (explaining that the plaintiff was "expected to have read the contract as any failure to read the contract is an unavailing excuse"); *Caparra v. Maggiano's Inc.*, No. 14-CV-5722, 2015 U.S. Dist. LEXIS 116409, at *15 (E.D. Pa. Sept. 1, 2015) ("Under Pennsylvania law, '[c]ontracting parties are normally bound by their agreements, without regard to whether the terms thereof were read and fully understood and irrespective of whether the

agreements embodied reasonable or good bargains.'") (quoting *Simeone v. Simeone*, 581 A.2d 162, 165 (Pa. 1990)).

Similarly, the Court rejects Plaintiff's argument that the ADR Agreement is procedurally unconscionable because Defendants design their admissions process to overwhelm and confuse the parties. Plaintiff testified that she met with Ms. McCoy for fifteen to twenty minutes regarding a dozen admissions documents. (ECF No. 42-3 at 16-17.) Plaintiff further stated that she understood that she had the legal authority to sign on Mr. Clouser's behalf and that she was cognitively sound when she signed the ADR Agreement. (*Id.* at 42-43.)

Plaintiff has failed to establish that the ADR Agreement is procedurally unconscionable. The ADR Agreement is not a contract of adhesion, and it was not presented to Plaintiff "on a take-it-or-leave-it basis." *Alexander*, 341 F.3d at 265. Plaintiff has also failed to demonstrate that she did not have a "meaningful choice" when she elected to sign the ADR Agreement. *Lucey*, 305 F. App'x at 877. Indeed, the plain and conspicuous terms of the ADR Agreement that are set forth above reveal that Plaintiff was under no obligation to sign it. The Court therefore concludes that the ADR Agreement is not procedurally unconscionable. *See, e.g.*, *Beavens*, 2015 U.S. Dist. LEXIS 110673, at *17-19 (concluding that the arbitration agreement, which included language identical to the ADR Agreement in the instant matter, "was not a take-it-or-leave-it deal" and explaining that the document was short, contained no fine print, and could easily be understood by a person with no legal training); *Glover*, 2014 U.S. Dist. LEXIS 31380, at *27-28 (finding that the arbitration agreement was not procedurally unconscionable because it stated that it

was not a requirement for admission); *Estate of Hodges*, 2013 U.S. Dist. LEXIS 46878, at *23, 27-28 (concluding that the arbitration agreement, which stated that "[a]dmission to the Community is not contingent upon signing this Agreement," was not unconscionable where the admissions process required the plaintiff to sign eighty-seven documents and rejecting the plaintiff's argument that she "was in a weak, almost desperate, position and the admission documents were presented to her with little explanation in a take-it-or-leave-it fashion").

Plaintiff has also failed to establish that the ADR Agreement is substantively unconscionable. The ADR Agreement provides that the parties will cooperate with one another in selecting a mediator and that they will share equally in the costs of mediation. (ECF Nos. 40-4 at 2, 40-5 at 2.) Regarding costs and fees, the ADR Agreement states that "[w]here Resident initiates arbitration against Facility, the only fee required to be paid by Resident is $250, which is approximately equivalent to a court filing fee; all other fees and costs . . . shall be paid by Facility." (ECF Nos. 40-4 at 3, 40-5 at 3.) The ADR Agreement further provides that "[w]here Facility initiates arbitration, Facility will pay all fees and costs associated with the arbitration other than Resident's attorney fees, if any." (ECF Nos. 40-4 at 3, 40-5 at 3.) The parties are required to bear their own costs and attorneys' fees. (ECF Nos. 40-4 at 3, 40-5 at 3.) Plaintiff has offered no legal support for her argument that the ADR Agreement is substantively unconscionable. Because the terms of the ADR Agreement are neither grossly one-sided nor manifestly unfair, the Court concludes that the ADR Agreement is not substantively unconscionable. *See, e.g.*, *Beavens*, 2015 U.S. Dist. LEXIS 110673, at *17-19 (concluding that the arbitration agreement, which

included language identical to the ADR Agreement in the instant matter, was not substantively unconscionable because it limited the plaintiff's arbitration costs to $250); *Glover*, 2014 U.S. Dist. LEXIS 31380, at *29-30 (finding that the arbitration agreement was not substantively unconscionable because the parties were to bear the costs of arbitration equally). Accordingly, the Court concludes that the ADR Agreement is valid and enforceable.

### B. Scope of the ADR Agreement

Defendants argue that Plaintiff's claims fall within the scope of the ADR Agreement because it applies to any and all disputes arising out of Mr. Clouser's stay at Golden Living Center-Hillview. (ECF No. 42 at 4-5, 17-20.) In response, Plaintiff argues that her claims are not within the scope of the ADR Agreement because arbitration agreements are not binding upon wrongful death heirs. (ECF No. 43 at 25-27.) Plaintiff asserts that because she and her children are not third-party beneficiaries, she cannot be compelled to arbitrate. (*Id.* at 28.) Plaintiff further contends that her wrongful death and survival actions cannot be bifurcated because Pennsylvania's Wrongful Death statute requires that the actions be heard together. (*Id.* at 30-31.)

The ADR Agreement includes within its scope "any and all disputes arising out of or in any way related to this Agreement or to the Resident's stay at the Facility or the Admissions Agreement between the Parties that would constitute a legally cognizable cause of action[.]" (ECF Nos. 40-4 at 2, 40-5 at 2.) This provision includes, but is not limited to, claims in law or equity arising from "a violation of a right claimed to exist under federal, state, or local law or contractual agreement between the Parties; tort;

breach of contract; consumer protection; fraud; misrepresentation; negligence; gross negligence; malpractice; and any alleged departure from any applicable federal, state, or local medical, health care, consumer, or safety standards." (ECF Nos. 40-4 at 2, 40-5 at 2.)

As discussed above, Plaintiff's claims against Defendants include a wrongful death action and a survival action. Under Pennsylvania law, "wrongful death actions are derivative of decedents' injuries but are not derivative of decedents' rights." *Pisano v. Extendicare Homes, Inc.*, 77 A.3d 651, 660 (Pa. Super. Ct. 2013), *appeal denied*, 86 A.3d 233 (2014), *and cert denied*, 134 S. Ct. 2890 (2014). "Accordingly, state and federal courts have consistently declined to compel arbitration of wrongful death claims in these types of cases, because the beneficiaries' rights cannot be surrendered by an agreement signed only by the decedent." *GGNSC Uniontown, LP v. Bauer*, 2015 U.S. Dist. LEXIS 170727, at *3-4 (W.D. Pa. Dec. 22, 2015) (citing *Erie Operating, LLC v. Foster*, No. 14-CV-72, 2015 U.S. Dist. LEXIS 137550, at *4-5 (W.D. Pa. Oct. 8, 2015); *GGNSC Erie Western Reserve, LP v. Stubits*, No. 15-CV-61, 2015 U.S. Dist. LEXIS 171812, at *13-14 (W.D. Pa. Aug. 7, 2015); *Pisano*, 77 A.3d at 660-61).

In contrast, recovery in survival actions "'stems from the rights of action possessed by the decedent at the time of death.'" *Pisano*, 77 A.3d at 659-60 (quoting *Moyer v. Rubright*, 651 A.2d 1139, 1141 (Pa. Super. Ct. 1994)). Survival claims thus generally fall within the scope of valid arbitration agreements signed by decedents. *See id.* at 654; *see also GGNSC Altoona Hillview LP v. Martz*, No. 3:15-CV-32, 2016 U.S. Dist. LEXIS 15043, at *11 (W.D. Pa. Feb. 8, 2016).

There is, however, a split among Pennsylvania state and federal courts as to whether a survival claim can be compelled to arbitration in a case where, as in the case at hand, there is a related wrongful death claim that cannot be compelled to arbitration. *See Bauer*, 2015 U.S. Dist. LEXIS 170727, at *4-5 (comparing *Taylor v. Extendicare Health Facilities, Inc.*, 113 A.3d 317, 321-28 (Pa. Super. Ct. 2015), *appeal granted*, 122 A.3d 1036 (Pa. 2015) (holding that because the issues were identical in the two actions, pursuant to Pennsylvania Rule of Civil Procedure 213(e), the survival claim should not be separated from the wrongful death claim and compelled to arbitration because of the possibility of "inconsistent liability and duplicative damage determinations"), *with Foster*, 2015 U.S. Dist. LEXIS 137550, at *4 (acknowledging a "split of authority as to whether the [Federal Arbitration Act] preempts Pa.R.C.P. 213(e)" and compelling arbitration of the survival claim and not the wrongful death claim); *and Beavens*, 2015 U.S. Dist. LEXIS 110673, at *30-31 (concluding that federal courts are not bound by *Taylor* and expressly finding that "the FAA preempts the application of Rule 213 to [such a case]")).

The Court is not bound by the Superior Court's decision in *Taylor* mandating the consolidation of survival and wrongful death claims. Instead, the Court will follow the well-settled law of the federal courts within the Third Circuit bifurcating survival and wrongful death claims when the parties have entered a valid and enforceable arbitration agreement. *See, e.g., Bauer*, 2015 U.S. Dist. LEXIS 170727, at *5 (explaining that if issue preclusion did not apply, "this Court would have to dismiss . . . the wrongful death claim, and would likely follow other federal courts in compelling the survival claim to arbitration"); *Foster*, 2015 U.S. Dist. LEXIS 137550, at *5 (explaining that "related claims

must sometimes be resolved piecemeal in different forums to accomplish the goals of the FAA") (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19-20 (1983)); *Hartman v. Sabor Healthcare Grp.*, No. 3:14-CV-2167, 2015 U.S. Dist. LEXIS 125615, at *25-26 (M.D. Pa. Sept. 21, 2015) (explaining that if the decedent was found to have executed the arbitration agreement, the court would retain the wrongful death claim and dismiss the survival action claims in favor of arbitration); *Beavens*, 2015 U.S. Dist. LEXIS 110673, at *28, 30 (explaining that "[t]he fact that [the plaintiff] cannot be compelled to arbitrate the wrongful death claim cannot stop arbitration of the survival action" and finding that the Superior Court's interpretation of the FAA in *Taylor* was incorrect); *Erie Operating, LLC v. Foster*, No. 14-CV-72, 2015 U.S. Dist. LEXIS 138312, at *11-12 (W.D. Pa. Aug. 13, 2015) (finding that the complaint to compel arbitration of the defendant's wrongful death claims should be dismissed because "piecemeal litigation is required 'irrespective of any concomitant decline in judicial efficiency'") (quoting *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 309 (3d Cir. 2009)); *Stubits*, 2015 U.S. Dist. LEXIS 171812, at *14 (declining to follow *Taylor* and severing the survival and wrongful death claims); *Northern Health Facilities v. Batz*, 993 F. Supp. 2d 485, 497 (M.D. Pa. 2014) (compelling arbitration of the survival action claims and determining that the wrongful death claims could not be arbitrated).

Accordingly, the Court will grant Defendants' motion to compel the arbitration of Plaintiff's survival action claim. The Court will deny Defendants' motion to compel the arbitration of Plaintiff's wrongful death claim and will retain the claim for further proceedings in this Court.

C.     Punitive Damages

Defendants request that Plaintiff's claims for punitive damages be stricken because she has failed to allege facts supporting the claims.  (ECF No. 40 at 10-11.)  Specifically, Defendants assert that Plaintiff merely alleges that Defendants' conduct was willful, wanton, and reckless but fails to set forth sufficient facts to demonstrate outrageous conduct that warrants the imposition of punitive damages.  (*Id.* at 11.)

As discussed above, the Court will retain Plaintiff's wrongful death claim.  "It is well settled that punitive damages are not recoverable in wrongful death actions under Pennsylvania law."  *Ortiz v. Porte Reve Transp., Inc.*, No. 1:15-CV-958, 2015 U.S. Dist. LEXIS 87050, at *12 (M.D. Pa. July 6, 2015).  *See also Shropshire v. Shaneyfelt*, No. 12-CV-1657, 2013 U.S. Dist. LEXIS 62425, at *5-6 (W.D. Pa. May 1, 2013) ("Pennsylvania law does not recognize the right to assert a claim for exemplary or punitive damages under the Wrongful Death Act, 42 Pa.C.S.A. § 8301[.]"); *Burke v. Glanton*, No. 12-CV-851, 2012 U.S. Dist. LEXIS 172647, at *5 (W.D. Pa. Dec. 5, 2012) ("Pennsylvania does not permit punitive damages in wrongful death actions.").  Accordingly, the Court will dismiss Plaintiff's claim for punitive damages as to her wrongful death claim.

Because the Court will compel Plaintiff's survival claim to arbitration, it need not decide whether Plaintiff's claim for punitive damages as to her survival claim should be dismissed.  *See Roman v. Chesapeake Appalachia, L.L.C.*, No. 3:11-CV-1614, 2012 U.S. Dist. LEXIS 79678, at *15 (M.D. Pa. June 7, 2012) (finding that it was unnecessary to address the defendant's argument regarding punitive damages because the court compelled arbitration); *Vosburg v. Chesapeake Appalachia, LLC*, No. 3:11-CV-1615, 2011 U.S. Dist. LEXIS

155364, at *12-13 (M.D. Pa. Nov. 16, 2011) (compelling arbitration without addressing the defendant's argument regarding punitive damages); *Willis v. Rubiera-Zim*, 705 F. Supp. 205, 208-09 (D.N.J. 1988) (declining to address the defendant's argument regarding punitive damages because "'[i]n light of the federal policy favoring arbitration . . . our task is to resolve all doubt in favor of the arbitrator's authority to award a particular remedy'") (quoting *Willoughby Roofing & Supply Co. v. Kajima Int'l, Inc.*, 776 F.2d 269 (11th Cir. 1985)). *See also Great Western Mortg. Corp. v. Peacock*, 110 F.3d 222, 230-31 (3d Cir. 1997) ("Since the purpose of the FAA is to ensure that agreements to arbitrate are enforced, a court compelling arbitration should preserve the remaining disputed issues for the arbitrator to decide.").

## VI. Conclusion

For the reasons set forth above, Defendants' amended motion to dismiss for failure to state a claim and Defendants' motion to compel arbitration will be granted in part and denied in part.

An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SYLVIA A. CLOUSER, | ) | |
| | ) | **CIVIL ACTION NO. 3:15-33** |
| Plaintiff, | ) | |
| | ) | **JUDGE KIM R. GIBSON** |
| v. | ) | |
| | ) | |
| GOLDEN GATE NATIONAL SENIOR | ) | |
| CARE, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### ORDER

**AND NOW**, this 23rd day of March, 2016, upon consideration of Defendants' amended motion to dismiss for failure to state a claim and Defendants' motion to compel arbitration (ECF No. 40), and upon consideration of the parties' briefing of Defendants' motions (ECF Nos. 42, 43, 48), and for the reasons set forth in the accompanying memorandum, **IT IS HEREBY ORDERED** that Defendants' motions are **GRANTED in part and DENIED in part** as follows:

(1) Defendants' motion to compel the arbitration of the wrongful death claim (Count I) is **DENIED**.

(2) Defendants' motion to compel the arbitration of the survival action claim (Count II) is **GRANTED**.

(3) Defendants' motion to dismiss Plaintiff's claim for punitive damages as to the wrongful death claim (Count I) is **GRANTED**.

(4) Defendants' motion to dismiss Plaintiff's claim for punitive damages as to the survival action claim (Count II) is **DENIED**.

**IT IS FURTHER ORDERED** that a post-discovery status conference as to Plaintiff's

wrongful death claim (Count I) is scheduled for April 7, 2016, at 10:00 a.m.

**BY THE COURT:**

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**